IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BRANDI ROBINSON, et al.,

   Plaintiffs,

     v.

ULTIMATE SPORTS BAR, LLC, et al.,

   Defendants.

CIVIL ACTION FILE
NO. 1:12-CV-2311-TWT

**OPINION AND ORDER**

This is a Fair Labor Standards Act lawsuit concerning unpaid minimum wage and overtime compensation. It is before the Court on the Defendant Alre Alston's Motion to Compel Arbitration [Doc. 37] and the Defendant Blue Star Kitchen, Inc.'s Motion to Dismiss [Doc. 29]. For the reasons set forth below, the Defendant Alre Alston's Motion to Compel Arbitration [Doc. 37] is DENIED and the Defendant Blue Star Kitchen, Inc.'s Motion to Dismiss [Doc. 29] is DENIED.

**I. Background**

The Plaintiffs Brandi Robinson, Nekecia Martin, and Tequila Duggan were servers for the Defendant Ultimate Sports Bar, LLC. (Second Am. Compl. ¶¶ 5, 9, 13.) Ultimate allegedly failed to pay the Plaintiffs minimum wage, required the Plaintiffs

to pay a portion of their tips "for reasons other than the pooling of tips among employees," and failed to compensate the Plaintiffs for overtime work. The Plaintiffs filed suit against Ultimate, asserting claims under the FLSA. In addition, the Plaintiffs have also named Blue Star Kitchen, Inc. and Alre Alston as Defendants. Blue Star operates a bar and restaurant called U Bar, which was formerly the Ultimate Sports Bar & Grill. (Second Am. Compl. ¶ 57.) The Plaintiffs allege that the bar run by Blue Star is merely a continuation of that which was run by Ultimate, (Second Am. Compl. ¶ 61), and thus Blue Star is liable under the FLSA as a successor. Additionally, Alston was a supervisor of the Plaintiffs while they worked as servers for Ultimate. (Second Am. Compl. ¶ 70.)

## II. Legal Standards

### A. Motion to Compel Arbitration

"The liberal federal policy favoring arbitration agreements . . . is at bottom a policy guaranteeing the enforcement of private contractual arrangements." <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 625 (1985). When considering a motion to compel arbitration, the Court must first "determine whether the parties agreed to arbitrate that dispute." <u>Id.</u> at 626. If they have, the Court must then determine whether the arbitration clause is valid. It may be unenforceable on grounds that would permit the revocation of any contract, such as fraud or

unconscionability. See id. at 627 ("[C]ourts should remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds 'for the revocation of any contract.'") (citing 9 U.S.C. § 2). There may also be legal constraints precluding arbitration, such as a clear congressional intention that a certain claim be heard in a judicial forum. See id. at 628 ("Having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue."). "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983). If the moving party establishes the necessary elements, "the FAA requires a court to either stay or dismiss a lawsuit and to compel arbitration." Lambert v. Austin Ind., 544 F.3d 1192, 1195 (11th Cir. 2008).

### B. Motion to Dismiss

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); FED. R. CIV. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff

would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." Bell Atlantic v. Twombly, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983); see also Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. See Lombard's, Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985), cert. denied, 474 U.S. 1082 (1986). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Twombly, 127 S. Ct. at 1964).

### III. Discussion

#### A. Alston's Motion to Compel Arbitration

The Defendant Alston moves to compel arbitration. To be clear, the Plaintiffs, Ultimate, and Alston initially filed a joint motion to stay proceedings pending arbitration on November 27, 2012, [Doc. 14], which was granted the next day, [Doc. 16]. On June 27, 2013, the Plaintiffs moved to reopen the case. [Doc. 18]. The

Plaintiffs claimed that the Defendants did not respond to a written request to schedule arbitration and select an arbitrator. [Doc. 18]. Alston did not oppose the Plaintiffs' Motion to Reopen, and so it was granted on July 26, 2013. [Doc. 19] Alston filed his current Motion to Compel Arbitration on April 9, 2014, over eight months after the Court reopened the case. [Doc. 37]. In their Response to Alston's Motion to Compel Arbitration, the Plaintiffs argue that Alston is now essentially moving the Court to reconsider its order reopening the case. (Pls.' Resp. to Alston's Mot. to Compel Arbitration, at 7-9.)

The Court agrees with the Plaintiffs. Under the local rules, "[f]ailure to file a response shall indicate that there is no opposition to the motion." L.R. 7.1(B). Alston's Motion to Compel Arbitration, if allowed, would function as an untimely response to the Plaintiffs' Motion to Reopen the Case.[1] Given that Alston has failed to provide any justification for this failure, his Motion to Compel Arbitration should be denied. Cf. Simon v. Kroger Co., 743 F.2d 1544, 1546-47 (11th Cir. 1984) (affirming a district court's decision to grant a motion as "unopposed" when the plaintiff "fil[ed] an

---

[1] Alston does not expressly dispute the premise of the Plaintiffs' argument: that if the Court were to grant Alston's Motion to Compel Arbitration, it must again stay the Plaintiffs' case against Alston until the arbitration is complete. Such a stay would obviously be inconsistent with the Court's order reopening the case against Alston.

untimely response, [and] did not seek an extension of time or leave to file his response late.").

In response, Alston argues that even though the case may have been reopened, the arbitrator has jurisdiction over the Plaintiffs' claims, not the Court. (Alston's Reply in Supp. of Mot. to Compel Arbitration, at 11-12.) This is incorrect. "[A]n agreement to arbitrate does not deprive a federal court of its jurisdiction over the underlying dispute." Vimar Seguros Y Reaseguros, S.A. v. M/V Sky Reefer, 29 F.3d 727, 733 (1st Cir. 1994), aff'd, 515 U.S. 528 (1995). "[C]ases to the effect that a court lacks authority to act in the face of a valid arbitration agreement do not necessarily implicate jurisdiction in the basic sense, but . . . stand merely for the proposition that if either party *seasonably* claims his right to arbitrate, the agreement must be recognized." DiMercurio v. Sphere Drake Ins., PLC, 202 F.3d 71, 78 (1st Cir. 2000) (internal quotation marks omitted) (emphasis added).

Alston then argues that the Plaintiffs – if they believed that Alston was uncooperative in scheduling the arbitration – were obligated to first file a motion to compel arbitration. Once more, this is incorrect. Although moving to compel arbitration would have been one possible route, see, e.g., Real Color Displays, Inc. v. Universal Applied Technologies Corp., 950 F. Supp. 714, 717 (E.D.N.C. 1997) ("Under the statutory language, the aggrieved party *may* petition the district court for

an order compelling arbitration if the other party fails, neglects, or refuses to arbitrate[,] [but] [a] party is not *required* to petition the court for arbitration in any event."), nothing prohibits the Plaintiffs from instead moving to reopen the case and arguing that Alston has forfeited his right to arbitration, see S & H Contractors, Inc. v. A.J. Taft Coal Co., Inc., 906 F.2d 1507, 1514 (11th Cir. 1990) ("[A] party may, by its conduct, waive its right to arbitration.").[2] That is precisely what the Plaintiffs did here, and Alston failed to argue otherwise when given the opportunity.

### B. Blue Star's Motion to Dismiss

Blue Star argues that the Plaintiffs cannot assert their FLSA claims against Blue Star based on a theory of successorship liability. As an initial matter, the Court must determine which law – federal or state – governs the successorship question for an FLSA claim. The Plaintiffs argue that the federal successor liability doctrine is applicable. Blue Star does not advance any argument to the contrary, but merely assumes that Georgia law would govern. (Blue Star's Mot. to Dismiss, at 15-16.) The Court agrees with the Plaintiffs, and concludes that the federal successor liability doctrine applies to FLSA claims. Although the Eleventh Circuit has not expressly

---

[2] To be clear, the Court does not have to reach the issue of whether Alston has waived his right to arbitration as per the two-part waiver test explained in Ivax Corp. v. B. Braun of Am., Inc., 286 F.3d 1309, 1315 (11th Cir. 2002). Here, the conclusion is that Alston's failure to oppose the Motion to Reopen – absent any justification – means that he has forfeited his right to now insist on arbitration.

addressed this question, it has acknowledged the existence of a federal successorship doctrine applicable to certain federal labor laws. See Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp., 10 F.3d 1563, 1566 (11th Cir. 1994) ("[T]he successorship doctrine of labor law . . . imposes the status of successor on an employer and places certain obligations upon it as such successor."); In re National Airlines, Inc., 700 F.2d 695, 698 (11th Cir. 1983). Further, several Circuit Courts have found that the federal doctrine applies specifically to FLSA claims. See Teed v. Thomas & Betts Power Solutions, L.L.C., 711 F.3d 763, 765-67 (7th Cir. 2013) ("We must consider whether the federal [successor liability] standard applies when liability is based on the Fair Labor Standards Act . . . the federal standard applies to this case."); Thompson v. Real Estate Mortgage Network, No. 12-3828, 2014 WL 1317137, at *6 (3d Cir. Apr. 3, 2014) ("Two of our sister circuits have . . . concluded that application of the federal standard to claims under the FLSA is the logical extension of existing case law . . . [w]e agree."); Steinbach v. Hubbard, 51 F.3d 843, 845 (9th Cir. 1995) ("[F]ederal courts have developed a federal common law successorship doctrine that now extends to almost ever employment law statute . . . we conclude that successorship liability exists under the FLSA."). The Ninth Circuit explained the rationale:

> Successorship liability was originally adopted under the NLRA to avoid labor unrest and provide some protection for employees against the

>effects of a sudden change in the employment relationship. . . . In deciding to extend successorship liability to other contexts, courts have recognized that extending liability to successors will sometimes be necessary in order to vindicate important statutory policies favoring employee protection.
>
>. . .
>
>The FLSA was passed to protect workers' standards of living through the regulation of working conditions. . . . That fundamental purpose is as fully deserving of protection as the labor peace, anti-discrimination, and worker security policies underlying the NLRA, Title VII, 42 U.S.C. § 1981, ERISA, and MPPAA. The analysis set forth in the cases extending potential liability under these statutes justifies application of the doctrine here as well.

Steinbach, 51 F.3d at 845.

Under the federal successorship doctrine, the Court must consider: "(1) continuity in operations and work force of the successor and predecessor employers; (2) notice to the successor-employer of its predecessor's legal obligation; and (3) ability of the predecessor to provide adequate relief directly." Thompson, 2014 WL 1317137, at *5; see also Steinbach, 51 F.3d at 845-46; In re National Airlines, 700 F.2d at 698 ("[T]he Court balances the interests of the employees and the employer and labor law policy . . . [s]uch factors as the extent to which the successor corporation essentially continues the operations of the former corporation and whether the new corporation had notice of the former corporation's practices and policies are also a part of this inquiry."). Here, the Plaintiffs' allegations satisfy these requirements. The Plaintiffs allege that Blue Star operates its bar at the same location

where Ultimate had operated its bar, (Second Am. Compl. ¶ 60), uses the same equipment that Ultimate used, (Second Am. Compl. ¶ 58), and uses the same telephone number, (Second Am. Compl. ¶ 59). The Plaintiffs further allege that Blue Star was aware of Ultimate's legal obligations, (Second Am. Compl. ¶ 63), and that Ultimate is unable to provide the Plaintiffs with adequate relief, (Second Am. Compl. ¶ 65).

In response, Blue Star first argues that the Plaintiffs' successor liability claim is an impermissible attempt to sidestep Ultimate's bankruptcy proceedings. (Blue Star's Mot. to Dismiss, at 7-14.) Blue Star points out that Ultimate – *after* it had already sold its assets to Blue Star – underwent Chapter 7 liquidation, and its assets were then disbursed to the creditors based on the bankruptcy priority scheme.[3] Consequently, Blue Star argues, the successor liability claim would allow the Plaintiffs to circumvent this priority scheme by allowing them to collect an amount that creditors with higher priority could not collect from Ultimate. This argument fails. To begin, Blue Star does not cite to a single case where the successorship doctrine was

---

[3] Blue Star argues that the Court may take judicial notice of Ultimate's bankruptcy proceedings. "A district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment . . . [and] [p]ublic records are among the permissible facts that a district court may consider." Universal Express, Inc. v. U.S. S.E.C., 177 Fed. Appx. 52, 53 (11th Cir. 2006). Because the Plaintiffs do not dispute this issue, the Court will take judicial notice of the filings in Ultimate's bankruptcy proceedings.

found inapplicable for this reason when the underlying asset sale took place *prior* to the bankruptcy proceedings. Furthermore, the Plaintiffs' ability to collect from Blue Star will not alter what Ultimate's creditors were able to obtain in Ultimate's bankruptcy proceedings.[4] As the Seventh Circuit explained when confronting a similar argument:

> The . . . argument raised to preclude successor liability claims following bankruptcy is that the successorship doctrine frustrates the orderly scheme of the Bankruptcy Code by allowing some unsecured creditors to leapfrog over others. . . . Or so the argument goes. In fact, once a bankruptcy proceeding is completed and its books closed, the bankrupt has ceased to exist and the priorities by which its creditors have been ordered lose their force. In the instant case, whatever happens to [the successor] in the [plaintiff's] pursuit of this claim will have no effect on the bankruptcy proceeding-that is over and done with and the debtor, [the predecessor entity], has ceased to be. [The plaintiff's] suit, a full two years after the bankruptcy case has closed, cannot possibly affect the amount of property available for distribution to [the predecessor's] creditors; all of [the predecessor's] property has already been distributed.

Chicago Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Tasemkin, Inc., 59 F.3d 48, 51 (7th Cir. 1995) (internal quotation marks omitted).[5]

---

[4] For example, if the Court were to inhibit the Plaintiffs from moving forward with their FLSA claims, Ultimate's other creditors would not – on account of that alone – receive any additional payment.

[5] Blue Star makes two other related arguments that may easily be disposed of. Blue Star first argues that the Plaintiffs' claims against Blue Star must be dismissed because the bankruptcy trustee has exclusive jurisdiction over the assets of the bankruptcy estate. The problem with this argument, of course, is that Blue Star's current assets do not belong to Ultimate's bankruptcy estate. Blue Star then argues

Additionally, the policy behind the federal successorship doctrine in labor law is in no way affected by the existence of a bankruptcy proceeding. See <u>Anderson v. J.A. Interior Applications, Inc.</u>, No. 97 C 4552, 1998 WL 708851, at *6 (N.D. Ill. Sept. 28, 1998) ("[T]he policy considerations governing successor liability in employment related cases support successor liability even where bankruptcy proceedings are ongoing.").

Blue Star then argues that the agreement pursuant to which it purchased Ultimate's assets expressly states that Blue Star is not assuming any of Ultimate's liabilities. (Blue Star's Mot. to Dismiss, at 16.) But "a disclaimer of successor liability is not a defense." <u>Teed</u>, 711 F.3d at 765. Indeed, one of the policies behind the federal successorship doctrine in labor law is to prevent such disclaimers from automatically shielding an entity from liability. See <u>id.</u> at 766 ("In the absence of successor liability, a violator of the Act could escape liability . . . by selling its assets without an assumption of liabilities by the buyer . . . and then dissolving."). Accordingly, Blue Star's Motion to Dismiss the Plaintiffs' FLSA claims should be denied.

---

that there is no successor liability when assets are purchased in a sale conducted under 11 U.S.C. § 363(f). Section 363(f), however, only applies to sales made by a bankruptcy trustee. See 11 U.S.C. § 363(f) ("The *trustee* may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if . . ..").  Here, even Blue Star acknowledges that the asset sale took place before Ultimate even filed its bankruptcy petition. (Blue Star's Reply in Supp. of its Mot. to Dismiss, at 5.)

## IV. Conclusion

For these reasons, the Court DENIES the Defendant Alre Alston's Motion to Compel Arbitration [Doc. 37] and DENIES the Defendant Blue Star Kitchen, Inc.'s Motion to Dismiss [Doc. 29].

SO ORDERED, this 16 day of May, 2014.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge